This Opinion Is a
Precedent of the TTAB

Mailed: February 7, 2020

UNITED STATES PATENT AND TRADEMARK OFFICE

————

Trademark Trial and Appeal Board

————

*In re Colors in Optics, Ltd.*

Serial No. 87558653

————

John Zaccaria and Nader Abadir of Notaro, Michalos & Zaccaria, P.C., for Colors in
    Optics, Ltd.

Susan Stiglitz, Trademark Examining Attorney, Law Office 109, Michael Kazazian,
    Managing Attorney.

————

Before Thurmon, Deputy Chief Administrative Trademark Judge, Adlin and Hudis,
Administrative Trademark Judges.

Opinion by Thurmon, Deputy Chief Administrative Trademark Judge:

Colors in Optics, Ltd. ("Applicant") seeks registration of J HUTTON (in standard

characters) on the Principal Register for "Eyewear, eyewear frames and sunglasses,"

in International Class 9.[1] The Examining Attorney refused registration under

Trademark Act Section 2(e)(4), 15 U.S.C. §1052(e)(4), finding "the applied-for mark

———————————

[1] Application Serial Number 87558653, filed August 7, 2017 based on an alleged bona fide intent to use the mark in commerce under Trademark Act Section 1(b), 15 U.S.C. § 1051(b). Page references to the application record are to the downloadable .pdf version of the USPTO's Trademark Status & Document Retrieval (TSDR) system. References to the briefs, motions and orders on appeal are to the Board's TTABVUE docket system. Coming before the designation TTABVUE is the docket entry number; and coming after this designation are the page references, if applicable.

is primarily merely a surname."[2] Applicant responded by arguing J HUTTON is not a surname, but rather a reference to a specific individual due to the inclusion of the initial "J" in the mark.[3] The Examining Attorney rejected this argument, and made the Section 2(e)(4) refusal final. Applicant filed this appeal, which has been fully briefed. The sole issue presented is whether the applied-for mark J HUTTON is primarily merely a surname. We find it is, and therefore affirm the refusal to register.

## I.    The Record and Prosecution History

The Examining Attorney submitted evidence of the use of Hutton as a last name in the United States.[4] Applicant did not challenge this evidence and admitted Hutton was the surname of a person associated with Applicant, Jade Hutton.[5] Indeed, Applicant submitted a consent to the use of her name in the mark.[6] Applicant also submitted abstracts from the USPTO's Trademark Electronic Search System ("TESS") of third-party registered marks consisting of surnames preceded by one or more initials which issued without a claim of acquired distinctiveness under Section 2(f), 15. U.S.C. § 1052(f).[7]

---

[2] Office Action dated November 9, 2017.

[3] Response to Office Action dated April 28, 2018.

[4] Office Action dated November 9, 2017 at 5-8 (showing Internet name rankings indicating Hutton was the 1925th or 1836th most common name in the United States in 1999 and 2000); Office Action dated June 4, 2018 at 22 (showing that Hutton appeared "26,379 times as a surname in the LEXIS ADVANCED® surname database").

[5] Response to Office Action dated April 28, 2018. Ms. Hutton is identified in the evidence as a designer and as the Chief Creative Officer of Applicant. Office Action dated June 4, 2018 at 7, 10, 12, 16.

[6] Response to Office Action dated April 28, 2018 at 44.

[7] *Id.* at 8-42. Each registration cited by Applicant includes a consent under Section 2(c) noting that the mark identifies a living individual. Each mark appears to include at least one initial

In her final Office Action, making the Section 2(e)(4) refusal final, the Examining Attorney noted that Applicant submitted "no evidence that Ms. Hutton also goes by the name 'J HUTTON' or is known as 'J HUTTON.'"[8] The final Office Action also contained evidence from Applicant's website showing that "Sanford Hutton is identified as the founder and CEO of the applicant."[9] The Examining Attorney additionally submitted evidence from press mentions of Applicant showing references to "Jade Hutton" and to "Hutton" alone, but found none to "J Hutton."[10] In its Request for Reconsideration Applicant made of record further examples of registered marks that appear to consist of surnames preceded by one or more initials which issued without a claim of acquired distinctiveness.[11]

## II.  Analysis

The federal Trademark Act prohibits registration of a mark that is "primarily merely a surname."[12] 15 U.S.C. § 1052(e)(4). "The test for determining whether a mark is primarily merely a surname is the primary significance of the mark as a whole to the purchasing public." *In re Hutchinson Tech. Inc.*, 852 F.2d 552, 7 USPQ2d 1490, 1492 (Fed. Cir. 1988); *see also In re Integrated Embedded*, 120 USPQ2d 1504,

---

and one full name (i.e., an unabbreviated name) of the consenting individual, though the full name is not always the individual's surname.

[8] Office Action dated June 4, 2018 at 3.

[9] *Id.*

[10] *Id.* at 6-21.

[11] Request for Reconsideration dated July 5, 2018 at 9-205. Applicant submitted with the Request for Reconsideration more examples of registered marks that appear to include individual's names plus at least one initial.

[12] Such a mark can be registered upon a showing that it has acquired distinctiveness. 15 U.S.C. § 1052(f).

1505 (TTAB 2016). When relevant, the Board often considers one or more of the following inquiries to determine whether a mark is primarily merely a surname:

1. the degree of a surname's rareness;

2. whether anyone connected with applicant has that surname;

3. whether the term has any recognized meaning other than that of a surname;

4. whether the term has the "structure and pronunciation" of a surname; and,

5. whether the stylization of lettering is distinctive enough to create a separate commercial impression.

*In re Benthin Mgmt. GmbH,* 37 USPQ2d 1332, 1333-34 (TTAB 1995).[13] These considerations "are examples of inquiries that may lead to evidence regarding the purchasing public's perception of a term's primary significance. These inquiries or 'factors' are not exclusive and any of these singly or in combination and any other relevant circumstances may shape the analysis in a particular case." *Azeka Building Corp. v. Azeka,* 122 USPQ2d 1477, 1480 (TTAB 2017); *see also In re Eximius Coffee, LLC,* 120 USPQ2d 1276, 1277 (TTAB 2016).

For example, in *In re Etablissements Darty et Fils,* 759 F.2d 15, 225 USPQ 652, 653 (Fed. Cir. 1985), the Court of Appeals for the Federal Circuit considered the following: whether the applicant adopted a principal's name and used it in a way that revealed its surname significance; whether the term had a non-surname "ordinary language" meaning; and the extent to which the term was used by others as a surname.

---

[13] When the "mark is in standard characters, it is unnecessary to consider the fifth [*Benthin*] factor." *In re J.J. Yeley,* 85 USPQ2d 1150, 1151 (TTAB 2007).

The Examining Attorney made of record evidence that shows the Hutton surname is not rare within the United States. Applicant concedes Hutton is the surname of Jade Hutton, who is associated with Applicant. Other evidence shows a second person with the Hutton surname, Sanford Hutton, who founded and runs Applicant.[14] There is no evidence in the record of other meanings of the word Hutton, and Applicant does not contend the Hutton name lacks the structure and pronunciation of a surname. Indeed, Applicant does not seriously dispute that Hutton is primarily merely a surname.

The applied-for mark, however, is not Hutton. It is J HUTTON, and Applicant argues the mark as a whole refers to and identifies Jade Hutton, an individual.[15] Perhaps that was Applicant's intention, but the question is not what J HUTTON means to Applicant. The question is what it means to relevant consumers. *Etablissements Darty*, 225 USPQ at 653 (noting fact intensive nature of the inquiry); *In re Kahan & Weisz Jewelry Mfg. Corp.*, 508 F.2d 831, 184 USPQ 421, 422 (CCPA 1975) ("a correct resolution of the issue can be made only after the primary significance of the mark to the purchasing public is determined").

The *Yeley* case provides a helpful roadmap for an applicant who claims the use of initials plus a surname results in a personal name rather than merely a surname. *Yeley*, 85 USPQ2d at 1151-52. In that case, a well-known NASCAR driver sought to register the mark J. J. YELEY. Mr. Yeley submitted a declaration explaining how the

---

[14] Mr. Hutton is identified as CEO and founder on Applicant's website and also in an interview given by Jade Hutton. Office Action dated June 4, 2018 at 20, 23.

[15] 10 TTABVUE 4, 9-10.

mark J. J. YELEY was used, noting that many other NASCAR drivers used their names as trademarks for various goods. *Id.* at 1052-53. This evidence showed that J. J. YELEY had a recognized meaning as a mark due to Mr. Yeley's popularity as a race car driver, and not merely as a surname. The Board also found that Yeley was a rare surname, and J. J. Yeley had the "look and sound" of a personal name because it included two initials. The Board reversed the surname refusal, concluding "the primary significance of J. J. YELEY is a personal name and the identity of the race car driver." *Id.* at 1054; *see also In re P.J. Fitzpatrick, Inc.*, 95 USPQ2d 1412, 1413 (TTAB 2010) (finding the mark P.J. FITZPATRICK, INC. was "an entire personal name, not 'merely' a surname").

We contrast the evidence considered in the *Yeley* decision to the current record where Applicant uses a single initial and there is no declaration describing use of J HUTTON. All we have in the record here is Jade Hutton's written consent that begins, "I, J HUTTON, consent …" but the signature line identifies Jade Hutton and the signature is clearly Jade Hutton.[16] The record in the *Yeley* case showed that J. J. Yeley was the name used by a well-known race car driver. The record here shows that Jade Hutton is the name of a person associated with Applicant, but there is no evidence that consumers identify Ms. Hutton as J Hutton. That is, while J. J. Yeley and P. J. Fitzpatrick were found in the cases cited above to be personal names (and not merely surnames) based on the evidence considered in those cases, there is no

---

[16] Response to Office Action dated April 28, 2018 at 44.

evidence here that J Hutton is perceived as a personal name by the relevant consumers.

The evidence noted above and relied upon by the Examining Attorney is sufficient to make a prima facie showing that J HUTTON is primarily merely a surname. The applied-for mark is comprised of a surname preceded by a single initial, but there is no evidence the applied-for mark as a whole is or will be recognized by consumers as a reference to a particular individual. This appeal, therefore, is similar to *In re I. Lewis Cigar Mfg. Co.*, 205 F.2d 204, 98 USPQ 265, 267 (CCPA 1953), where the court explained,[17] "It seems to us that 'Seidenberg' is clearly a surname which can have no other meaning or significance than that of a surname. Nor do we believe that the addition of the single initial is sufficient to remove it from that category." In this case, Applicant submitted no evidence to show what impact, if any, the letter J has on consumer perception of the applied-for mark. We are left, therefore, with a case that is indistinguishable from *I. Lewis*.

The present case, however, is different from *Yeley* and *Fitzpatrick*, because in each of those cases, two initials (each with a period) preceded a surname. As the Board noted in *Fitzpatrick,* "if a mark consists of two initials (or more) coupled with a surname, it typically will convey a commercial impression of a personal name, and thus generally will not be primarily merely a surname." 95 USPQ2d at 1413. As the Board further explained however, "there is no per se rule" regarding the addition of initials to surnames. *Yeley*, 85 USPQ2d at 1154; *see also Fitzpatrick*, 95 USPQ2d at

---

[17] The applied-for mark was "S. Seidenberg & Co's."

1413 (noting *I. Lewis* did not set out a per se rule). Adding a single initial to a surname may lead consumers to perceive the mark as a personal name, while in some instances even adding two initials to a surname may not create such an impression. In all cases involving a surname preceded by one or more initials, it is the factual record that matters most, because only from such a record can we make reliable findings about consumer perception.

Because the Examining Attorney made a "prima facie case" that the mark J HUTTON is primarily merely a surname, the burden shifts "to the applicant to rebut this finding." *Hutchinson Tech.*, 7 USPQ2d at 1492; *see also In re Gyulay*, 820 F.2d 1216, 1217 (Fed. Cir. 1987). "[W]e must weigh all of the evidence from the examining attorney and the applicant to determine ultimately whether the mark is primarily merely a surname." *Yeley,* 85 USPQ2d at 1151 (citation omitted). To rebut the Examining Attorney's prima facie showing, Applicant must present evidence probative of consumer perception of the mark. *Azeka Building*, 122 USPQ2d at 1480 (focusing on evidence of consumer perception of the mark); *In re Eximius Coffee LLC*, 120 USPQ2d at 1280-81 (same).

Applicant presented no evidence of likely consumer perception of J HUTTON. There is evidence that Jade Hutton is an individual associated with Applicant, but all evidence shows Ms. Hutton being identified as Jade Hutton, not J Hutton. Even her own declaration was signed as Jade Hutton, not J Hutton. Without evidence showing that relevant consumers will perceive J HUTTON as identifying a specific

individual, the Examining Attorney's prima facie showing that the applied-for mark is primarily merely a surname has not been rebutted.

Rather than presenting relevant and probative evidence, Applicant relied entirely on argument and third-party registrations of surnames plus one or more initials.[18] Such registrations show that the combination of one or more initials with a surname may be found, depending on the evidence in the case,[19] to indicate that the public would not perceive such a designation as primarily merely a surname, but those registrations are not evidence of how consumers will perceive the mark at issue in this appeal.[20] The *Yeley* decision is consistent with this point as the Board focused there on the specific J. J. YELEY mark and the evidence of likely consumer reaction to that mark. The Board did not find the mark registrable merely because it included the letters "J "and "J" before the Yeley surname.

Some evidence showing how relevant consumers are likely to perceive the applied-for mark was necessary to rebut the prima facie showing, not argument alone. *See In re U.S. Tsubaki, Inc.*, 109 USPQ2d 2002, 2007 (TTAB 2014). Applicant contends that consumers will perceive the J HUTTON mark as the personal name of Jade Hutton,

---

[18] 10 TTABVUE 5-9; Response to Office Action dated April 28, 2018 at 8-42; Request for Reconsideration dated July 5, 2018 at 9-205.

[19] *Cf. In re Harris-Intertype Corp.*, 518 F.2d 629, 186 USPQ 238, 240 (CCPA 1975) ("Appellant cites the registration of 'HARRIS' (to other owners) on the principal register without reliance on subsection 2(f), as shown by registration Nos. 743,358 (January 8, 1963) and 888,113 (March 24, 1970). We do not know what evidence was before the PTO when the applications were considered, so the citations have no precedential value.") (citations omitted).

[20] Moreover, "[e]ven if some prior registrations had some characteristics similar to [the pending] … application, the PTO's allowance of such prior registrations does not bind the Board …." *In re Nett Designs, Inc.*, 236 F.3d 1339, 57 USPQ2d 1564, 1566 (Fed. Cir. 2001).

the individual who consented to use of her name in the mark.[21] There is, however, no evidence in the record to support this argument. The Examining Attorney submitted evidence of references to Jade Hutton, but Applicant did not make of record any uses of J Hutton as a personal name.. We find that the mark J HUTTON is primarily merely a surname.

**Decision:** The refusal to register under Section 2(e)(4) is affirmed.

---

[21] 10 TTABVUE 4, 9-10.