**This Opinion is Not a
Precedent of the TTAB**

Mailed: March 5, 2020

UNITED STATES PATENT AND TRADEMARK OFFICE

————

Trademark Trial and Appeal Board

————

*In re Chas. H. Challen (1804) Limited*

————

Serial No. 87517062

————

Paulo A. de Almeida, Alex D. Patel and Gregory Kenyota of Patel & Almeida PC,
for Chas. H. Challen (1804) Limited.

Luz Adorno, Trademark Examining Attorney, Law Office 111,
Chris Doninger, Managing Attorney.

————

Before Taylor, Kuczma and Greenbaum,
Administrative Trademark Judges.

Opinion by Greenbaum, Administrative Trademark Judge:

Chas. H. Challen (1804) Limited ("Applicant") seeks registration on the Principal

Register of the mark CHALLEN, in stylized form displayed as

 for:

Musical instruments; Bows for musical instruments;
Electronic musical keyboards; Harmonicas; Clarions;
Guitars; Tuners for musical instruments; Electronic
musical instruments; Saxophones; Pianos; Piano strings;

> Piano keyboards; Trombones; Organs; Bagpipes, in International Class 15.[1]

The Trademark Examining Attorney refused registration on the ground that Applicant's mark is primarily merely a surname under Trademark Act Section 2(e)(4), 15 U.S.C. § 1052(e)(4). After the Examining Attorney denied Applicant's request for reconsideration, the appeal resumed and Applicant filed a brief. Then, a newly assigned Examining Attorney requested remand, which the Board granted. Upon resumption of the appeal, Applicant filed a supplemental brief, the Examining Attorney filed a brief, and Applicant filed a reply brief. We reverse the refusal to register.

## I. Applicable Law

A term is primarily merely a surname if, when viewed in relation to the goods or services for which registration is sought, its primary significance to the purchasing public is that of a surname. *Earnhardt v. Kerry Earnhardt, Inc.*, 864 F.3d 1374, 123 USPQ2d 1411, 1413 (Fed. Cir. 2017); *In re Beds & Bars, Ltd.*, 122 USPQ2d 1546, 1548 (TTAB 2017). Whether the primary significance of an applied-for mark is merely that of a surname is a question of fact. *See In re Etablissements Darty et Fils*, 759 F.2d 15, 225 USPQ 652, 653-54 (Fed. Cir. 1985). There is no rule as to the kind or amount of evidence necessary to make out a prima facie showing that the applied-for

---

[1] Application Serial No. 87517062 was filed on July 5, 2017 under Section 1(a) of the Trademark Act, 15 U.S.C. § 1051(a) of the Trademark Act, based upon Applicant's claim of first use anywhere and use in commerce since at least as early as May 30, 2016. The description of the mark reads as follows: "The mark consists of the stylized word 'Challen.'" Color is not claimed as a feature of the mark.

mark would be perceived as primarily merely a surname. The question must be resolved on the specific facts presented in each case. *Id*. at 654; *see also, e.g., Beds & Bars*, 122 USPQ2d at 1548. The entire record is examined to determine the primary significance of a term.

In *Darty*, the Federal Circuit considered several factors in determining whether the purchasing public would perceive a proposed mark as primarily merely a surname, including whether the applicant adopted a principal's name and used it in a way that revealed its surname significance; whether the term had a nonsurname "ordinary language" meaning; and the extent to which the term is used by others as a surname. *Id*., 225 USPQ at 653. The factors laid out in *In re Benthin Mgmt. GmbH*, 37 USPQ2d 1332, 1333-34 (TTAB 1995), also are examples of inquiries that may lead to evidence regarding the purchasing public's perception of a term's primary significance. These considerations are not exclusive, and any of these circumstances – singly or in combination – and any other relevant facts may shape the analysis in a particular case. *E.g., In re Integrated Embedded*, 120 USPQ2d 1504, 1506, n.4 (TTAB 2016); *In re Eximius Coffee, LLC*, 120 USPQ2d 1276, 1278 (TTAB 2016).[2]

---

[2] In *Benthin*, 37 USPQ2d at 1333-34, the Board stated that "factors" to be considered in determining whether a term is primarily merely a surname include (1) the degree of a surname's rareness; (2) whether anyone connected with the applicant has that surname; (3) whether the term has any recognized meaning other than that of a surname; (4) whether the term has the "structure and pronunciation" of a surname; and (5) whether the stylization of lettering is distinctive enough to create a separate commercial impression.

A.     Whether and to What Extent CHALLEN is Encountered as a Surname

We first consider the frequency of, and public exposure to, use of CHALLEN as a surname. *See Darty*, 225 USPQ at 653. In support of the refusal, the Examining Attorney submitted the first 50 of 345 entries of the surname "Challen" from the LEXISNEXIS surname database, and represented in her brief that the 2010 U.S. Census counted 133 people with the surname "Challen."[3] These figures support a finding that "Challen" is a rare surname in the United States. *See In re United Distillers plc.*, 56 USPQ2d 1220, 21 (TTAB 2000) ("Hackler" held to be a rare surname despite 1295 listings in phone directories).

However, even a rare surname may be held primarily merely a surname if its primary significance to purchasers is that of a surname. "The relevant question is not simply how frequently a surname appears, however, but whether the purchasing public for Applicant's [goods or] services is more likely to perceive Applicant's proposed mark as a surname rather than as anything else." *Beds & Bars*, 122 USPQ2d at 1551 (finding BELUSHI'S to be primarily merely a surname).

As evidence of consumer perception, the Examining Attorney submitted excerpts of 25 news articles from U.S. newspapers from the LEXISNEXIS research database

---

[3] The LEXISNEXIS surname results are attached to the March 23, 2019 Request for Reconsideration, TSDR pp. 3-5. The TSDR citations are to the downloadable .pdf format.

In her brief, the Examining Attorney asks the Board to take judicial notice of the census data of individuals with the surname "Challen," "Challenger" and "Challender." 16 TTABVUE 8. Applicant, in its reply brief, objected to this evidence as untimely. 17 TTABVUE 3. *See* Trademark Rule 2.142(d), 37 C.F.R. § 2.142(d) (evidence submitted after appeal generally is untimely). We overrule the objection because the Board may take judicial notice of census data. *See In re Highlights for Children, Inc.*, 118 USPQ2d 1268, 1271 n.7 (TTAB 2016) (Board may take judicial notice of U.S. Census Report).

referring to people with the surname "Challen."[4] Many of these 25 excerpts are from local papers concerning local news, with only passing references to someone with the surname "Challen." For example: a March 9, 2019 article from "Noozhawk" of Santa Barbara, California, titled "Out of The Box Theatre Company Stages Fun Home, A Musical Memoire; Show runs April 5-14 at Center Stage Theater" mentions that "Henry Challen" will play the role of "John"; a February 23, 2017 article from "The MetroWest Daily News" of Framingham, Massachusetts, titled "FRAMINGHAM: Call2Talk Hotline: Now help is just a call away Mental health line merges with Mass 2-1-1" mentions that "Polito also presented a citation to Roger Challen, who formerly owned the United Way's building on Park Street, and helped the organization purchase it to provide space for the food pantry"; an August 13, 2015 article in the "Tri-county Times" of Nevada, Iowa, titled "Four Raiders named all-HOIC in baseball" lists, among other team members, "catcher Jordan Challen"; and a December 23, 2018 article from "Decaturish.com" of Decatur, Georgia titled "Oakhurst Community Choir sings on CNN" mentions "[c]hoir member Keri Challen."[5]

---

[4] March 23, 2019 Request for Remand, TSDR pp. 6-43. Although the Examining Attorney characterizes the 25 articles a "sample" (*id*. at p. 1), the LEXISNEXIS printouts do not indicate the size of the universe from which the "sample" was taken, and the search does not appear to have any date restrictions. We therefore conclude that the Examining Attorney's LEXISNEXIS search returned only 25 results. In addition to being few in number, 8 of the articles were published between 2010 and 2013, and 4 of the articles were published between 2001 and 2010. The more current articles have greater probative value to our inquiry about current consumer perception.

[5] *Id*. at TSDR pp. 11, 19, 21 and 37.

A few other excerpts are from specialized news sources with no indication of the breadth of distribution or readership. For example: a September 2, 2010 article from the "MY TOWN; Alameda; Oakland-Berkeley; News; Local" section of the "Contra Costa Times" of California, titled "Celebrating Alice Challen's achievements" features the life and professional achievements of Dr. Alice Challen, whose "name is familiar to many Alamedans"; a December 18, 2012 article from the "St. Louis Business Journal" titled "Wash U professor gets $375,000 award for leukemia research" is about "Grant Challen, an assistant professor of medicine at Washington University"; a July 23, 2010 article from "The Commercial Appeal" of Memphis, Tennessee, titled "'The voice of reason' changing; As deputy district attorney retires, first female fills job" is about "Deputy Dist. Atty. Gen. James Challen, who is retiring after 32 years as a prosecutor" and "Amy Weirich," who will replace him; and a news release from "The Society of Automotive Engineers" issued on July 14, 2008 to the "Targeted News Service" titled "SAE International Awards Challen Medal of Honor" is about "Professor Bernard J. Challen, CEO, Shoreham Services."[6]

The Examining Attorney also submitted a March 1, 2019 news article from the "Morning Mix" section of The Washington Post, titled "She beat her husband's head in with a hammer. Now, her murder conviction has been tossed."[7] The article is about Sally Challen, a resident of the United Kingdom who was convicted there in 2009 and who was granted a new trial. Although the article appears in a widely circulated U.S.

---

[6] *Id.* at TSDR pp. 12, 20, 27 and 35.

[7] *Id.* at TSDR pp. 45-50.

newspaper, it is the only article about Sally Challen in the record, and there are only 617 "comments" to the article, suggesting a rather limited exposure to the United States public of "Challen" as a surname based on this single article.

The Examining Attorney also submitted a two-page printout from Amazon.com for "Challen Coat of Arms, Family Crest & History Combo-Name Meaning Plus Genealogy, Family Tree Research Aid, Roots, Ancestry, Ancestors and Namesakes – Wales Surname Origin."[8] There are no corresponding sales figures or any information about how many people accessed this webpage. At best, the webpage suggests that "Challen" might be a surname or have historical roots in Wales, but it is not evidence of use of "Challen" as a surname in the United States, nor does it demonstrate that consumers in the United States would perceive "Challen" as a surname.

In addition, the Examining Attorney made of record a screenshot from Ancestry.com with 20 listings of individuals with the surname "Challen" from the 1940 U.S. Census.[9] This evidence is outdated and of little probative value to our inquiry as to the current public perception of "Challen."

---

[8] *Id.* at TSDR pp. 51-52. A printout from the HouseOfNames.com "Challen History, Family Crest & Coat of Arms" webpage attributes a French or Welsh origin to the name. December 8, 2018 Denial of Request for Reconsideration, TSDR pp. 8-11.

[9] December 8, 2018 Denial of Request for Reconsideration, TSDR pp. 5-7. The results are "1-20 of 2,327,266" from "All Categories" including Census & Voter Lists; Birth, Marriage & Death; Military; Immigration & Emigration; Newspapers/Periodicals; Directories & Member Lists; Court, Land, Wills & Financial; and Family Trees, but there is no indication as what portion of the 2+ million results are currently living in the United States, or are individuals of particular note in the United States, or any other information that would make the total results figure pertinent to our inquiry of the current public perception of "Challen" as a surname in the United States.

Based on the record, we find that the relevant public has not had sufficient exposure to CHALLEN as a surname such that it is likely to be perceived as having surname significance.

### B. Whether CHALLEN is the Surname of Anyone Connected With Applicant

We next consider whether anyone who has a publicly known connection with Applicant has the surname "Challen." According to a timeline on Applicant's UK website covering notable events in the company's history from 1804 to 2006, "Charles H. Challen built his first piano" in 1804, and "Challen and sons was founded" in 1830.[10] However, no one with the surname "Challen" is associated with the company now, and there is no indication in the record that anyone with that surname has been associated with the company for many, many years. *Cf. In re Adlon Brand GmbH & Co. KG*, 120 USPQ2d 1717, 1724 (TTAB 2016) (noting that "if a person named Adlon were associated with the business and that association were promoted to the public, it would enhance the public's perception of the term as a surname"). Nor does Applicant, on its website or in its specimen of use, seek to capitalize on its historical connection to its founder, or to promote itself as a family business. *Cf., e.g, Eximius Coffee*, 120 USPQ2d at 1278-79 (Applicant's website traces its roots to Carlos de Aldecoa Fernandez in 1925, and touts its ongoing connection to the de Aldecoa family

---

[10] September 28, 2017 Office Action, TSDR pp. 8-9. The Examining Attorney also made of record printouts from two other UK websites (Grace's Guide to British Industrial History and The Virtual Pianoshop) with slightly different information about Applicant. Both websites list "Thomas Butcher" as the founder of Applicant in 1804, and list "William Challen" joining the company in 1816. *Id*. at TSDR pp. 10-12.

including current leadership by "Mr. and Mrs. de Aldecoa" who "continue their daily involvement with the companies." Also, Applicant's specimen displays the phrase "Premium Family Coffee" below "ALDECOA," "reinforcing its surname significance"). Indeed, other than the entries for 1804 and 1830, the "Challen" references in the timeline are to the company or its pianos, rather than to "Challen" as a surname or as a reference Applicant's founder or his family. The following excerpts are illustrative:

| Year | Timeline Excerpt |
| --- | --- |
| 1926 | "The Great Depression that hit most piano manufacturers in the 1930s did not seem to affect Challen: production rose from 500 pianos in 1925 to 2500 in 1935." |
| 1935 | "Challen was best known for its small grand pianos, but it also made the world's largest grand piano in 1935 for the silver jubilee of King George V." |
| 1936 | "Along with Steinway and Bosendorfer, signed a contract with the BBC to supply pianos, a move that guaranteed the sound of Challen pianos in every home across England." |
| 1959 | "William Evans's retired in 1959, the Challen name was sold to the Brasted Brothers." |
| 1986 | "Since 1986, Challen pianos have been assembled in western Malaysia …." |
| 1988 | "Challen sent a piano to the Royal Household, Amalienborg, Denmark. The Ministry of Education in several states have approved the use of our Challen, for their yearly external ABSRM and Trinity College examinations." |
| 1992 | "Peter Rippen of Holland, an expert in the piano designing industry, including grands, retained as a consultant as well as a marketing agent for sale of CHALLEN pianos in Europe." |

Another screenshot of a webpage from Applicant's website promotes "Challen" as the name of a piano manufacturing company, and the quality and reputation of the company and its pianos:

> Challen has been a name well-associated with the finest crafted pianos since 1804—pianos that have graced royal households, concert halls, music conservatorias, luxury hotels and broadcasting studios for decades. Challen has also been a name closely associated with the British Broadcasting Corporation for over 30 years. Having made it the piano of the British Broadcasting Corporation, its excellent tonal quality, reliability and consistency in performance have won the Challen piano the much coveted 'Royal Appointment Award' for product excellence. … Today, more than 201 years later, the reputation of the Challen piano is still ever present and it continues to be greatly sought after by pianists from all over the world. The successor to the renown 'Challen' mark is proud to play its part in maintaining the heritage that began in 1804.[11]

This webpage also includes a section titled "The History of Challen," which focuses on the world's largest grand piano, built by Challen in 1935 for the Silver Jubilee of King George V and Queen Mary, and reproduces a "letter in the Piano Tuners Quarterly from Challen dated 19th December 1940" about this piano. The "signature" under the reproduced letter is "Charles H. Challen," but this appears to be a reference to the name of the company, rather than the individual, who would not have been living in 1940.

> C.    Whether CHALLEN has any Recognized Meaning Other Than as a Surname

The Examining Attorney's search results from the Wordnik.com, Merriam-Webster, and Oxford Dictionaries (U.S. edition) and the Columbia Gazetteer show no

---

[11] April 30, 2018 Office Action, TSDR pp. 15-17. This website bears a web address from Malaysia. The printouts from Grace's Guide to British Industrial History and The Virtual Pianoshop indicate that in 1996, "Musical Products Sdn. Bhd of Malaysia started building pianos with the Challen name." September 28, 2017 Office Action, TSDR 11-13.

recognized meaning for "Challen" as a word in the English language, and no recognized geographic significance.[12]

D.     Whether CHALLEN has the Structure and Pronunciation of a Surname

In support of their respective positions, applicants and examining attorneys may submit evidence that, due to a term's structure and pronunciation, the public would or would not perceive it to have some surname significance. The Examining Attorney points to census data of individuals with the surnames CHALLENGER and CHALLENDER. 16 TTABVUE 8. However, neither name is structurally similar to CHALLEN.

E.     Whether the Stylization of the Lettering is Distinctive Enough to Create a Separate Commercial Impression

Applicant's stylization of **Challen** uses a block-type connected lettering style which is not unusual, and the letters are readily discernible. *See In re Pickett Hotel Co.*, 229 USPQ 760, 763 (TTAB 1986) ("The style of lettering … is clearly not so distinctive as to create any separate commercial impression in the minds of purchasers.").

---

[12] *Id.* at TSDR pp. 5-14.

## II. Conclusion

We find that the record, as a whole, does not establish that the primary significance of CHALLEN to the purchasing public is merely that of a surname within the meaning of Section 2(e)(4), and instead would be viewed as a fanciful, coined term.

**Decision**: The refusal to register Applicant's mark  is reversed.