THIS OPINION IS A
PRECEDENT OF THE TTAB

Hearing: December 9, 2021            Mailed: February 7, 2022

UNITED STATES PATENT AND TRADEMARK OFFICE

_____

Trademark Trial and Appeal Board

_____

*In re Six Continents Limited*

_____

Application Serial No. 88430142
Application Serial No. 88430162

_____

Danny M. Awdeh and Laura K. Johnson of Finnegan, Henderson, Farabow,
  Garrett & Dunner for Six Continents Limited.

William H. Dawe, III, Trademark Examining Attorney, Law Office 108,
  Kathryn E. Coward, Managing Attorney.

_____

Before Bergsman, Goodman and Coggins,
  Administrative Trademark Judges.

Opinion by Bergsman, Administrative Trademark Judge:

Six Continents Limited ("Applicant") seeks registration on the Principal Register

of ATWELL SUITES, in standard characters[1] and stylized, as shown below[2]:

---

[1] Serial No. 88430142 was filed on May 14, 2019, under Section 1(b) of the Trademark Act, 15 U.S.C. § 1051(b), and Section 44(d) of the Trademark Act, 15 U.S.C. § 1126(d), based on an unidentified Jamaican application filed April 11, 2019. Later, Applicant changed the Section 44 filing basis from Section 44(d) to Section 44(e) of the Trademark Act, 15 U.S.C. § 1126(e), based on United Kingdom Registration No. 3399418, registered August 2, 2019.

[2] Serial No. 88430162 was filed on May 14, 2019, under Section 1(b) of the Trademark Act. Later, Applicant added Section 44(e) of the Trademark Act based on United Kingdom Registration No. 3399426, registered on August 2, 2019.

**ATWELL**
**SUITES**

Both applications seek registration for the services listed below:

> Hotel management services for others; hotel franchising services, namely, offering business management assistance in the establishment and operation of hotels; business advisory and consultancy services relating to hotel management, operations, and franchising, in International Class 35; and

> Hotel services; providing temporary accommodation services; restaurant services; bar services; café services; hotel reservation services; restaurant reservation services; catering services for the provision of food and drink; provision of conference, meeting and exhibition facilities, and general purpose banquet and social function facilities, in International Class 43.

Applicant disclaims the exclusive right to use the word "Suites" in both applications.

The Examining Attorney refused to register Applicant's marks on the ground that ATWELL SUITES is primarily merely a surname under Section 2(e)(4) of the Trademark Act, 15 U.S.C. § 1052(e)(4).

Because the appeals involve common questions of fact and law, the Board consolidated the appeals in its August 7, 2021 order.[3] We refer to the record in Serial No. 88430142 unless otherwise indicated.

Our citations to the examination record refer to the USPTO Trademark Status and Document Retrieval (TSDR) system by page number in the downloadable .pdf format. References to the briefs on appeal refer to the Board's TTABVUE docket

---

[3] 41 TTABVUE.

system. Before the TTABVUE designation is the docket entry number; and after this designation are the page references, if applicable.

## I. Preliminary Issue

At the outset, we are compelled to make an observation regarding the prosecution of these applications by Applicant and the Examining Attorney. Both submitted evidence multiple times. For example, Applicant submitted:

● Duplicate copies of the Butler survey report;[4] and

● Duplicate copies of pages from Applicant's website.[5]

The Examining Attorney submitted:

● Duplicate copies of LexisNexis information regarding the surname Atwell;[6]

● Duplicate copies of the MERRIAM-WEBSTER DICTIONARY definition of the word "suite";[7] and

● Triplicate copies of THE COLUMBIA GAZETTEER OF THE WORLD listing for Atwell.[8]

Suffice it to say, the probative value of documentary evidence does not increase with repetition, it needlessly increases the size of the record, and makes review of the record more difficult.

---

[4] August 20, 2020 Response to Office Action (TSDR 25-215) and March 11, 2021 Request for Reconsideration (TSDR 242-270).

[5] February 10, 2020 Response to Office Action (TSDR 70-113) and March 11, 2021 Request for Reconsideration (TSDR 33-72). The two submissions are not identical but the differences are so de minimis that the second submission is needlessly cumulative.

[6] August 5, 2019 Office Action (TSDR 6-16) and September 20, 2020 Office Action (TSDR 11-21).

[7] August 5, 2019 Office Action (TSDR 17) and September 20, 2020 Office Action (TSDR 23).

[8] August 5, 2019 Office Action (TSDR 29), February 20, 2020 Office Action (TSDR 4), and September 11, 2020 Office Action (TSDR 74).

## II.   Applicable Law

Section 2(e)(4) of the Trademark Act provides that, absent a showing of acquired distinctiveness under Section 2(f), 15 U.S.C. § 1052(f), registration on the Principal Register must be refused if the proposed mark is "primarily merely a surname." A term is primarily merely a surname if, when viewed in relation to the goods or services for which registration is sought, its primary significance as a whole to the purchasing public is that of a surname. *Earnhardt v. Kerry Earnhardt, Inc.*, 864 F.3d 1374, 123 USPQ2d 1411, 1413 (Fed. Cir. 2017); *In re tapio GmbH*, 2020 USPQ2d 11387, at \*8 (TTAB 2020); *In re Beds & Bars Ltd.*, 122 USPQ2d 1546, 1548 (TTAB 2017); *In re Eximius Coffee, LLC*, 120 USPQ2d 1276, 1277 (TTAB 2016).

Whether the primary significance of a proposed mark is merely that of a surname is a question of fact. *See In re Etablissements Darty et Fils*, 759 F.2d 15, 225 USPQ 652, 653-54 (Fed. Cir. 1985). There is no rule as to the kind or amount of evidence necessary to show that relevant consumers will perceive a term as primarily merely a surname. This question must be resolved on a case-by-case basis. *In re tapio*, 2020 USPQ2d 11387, at \*8 (citing *Etablissements Darty et Fils*, 225 USPQ at 654); *see also, e.g.*, *In re Pohang Iron & Steel Co.*, 230 USPQ 79, 79 (TTAB 1986). We examine the entire record to determine the primary significance of a term. *In re Olin Corp.*, 124 USPQ2d 1327, 1330 (TTAB 2017). If there is any doubt, we "are inclined to resolve such doubts in favor of applicant." *In re Benthin Mgmt. GmbH*, 37 USPQ2d 1332, 1334 (TTAB 1995).

We may consider various inquiries in determining whether the purchasing public would perceive a proposed mark as primarily merely a surname, including the following that Applicant and the Examining Attorney have raised in these appeals:

● Whether Atwell has a non-surname, "ordinary language" meaning;

● The extent to which Atwell is encountered as a surname;

● Whether Atwell is the surname of anyone connected with the applicant;

● Whether the public may perceive Atwell, in the alternative, to be primarily a meaningless, coined term; and

● Whether Atwell has the structure and pronunciation of a surname.

*See Etablissements Darty et Fils*, 225 USPQ at 653-54; *Eximius Coffee*, 120 USPQ2d at 1278 & n.4 (reviewing factors from *Darty* and *Benthin Mgmt.* and noting there is no need to discuss inquiries for which the record lacks relevant evidence); *In re Adlon Brand GmbH & Co.*, 120 USPQ2d 1717, 1719, 1721 (TTAB 2016) (noting the consideration, if there is relevant supporting evidence of record, "of an alternative perceived meaning (which may include the perception of the mark as a coined term)").

These inquiries are not exclusive, nor are they presented in order of importance; any of the inquiries—singly or in combination—as well as any other relevant circumstances, may shape the analysis in a particular case. *In re tapio*, 2020 USPQ2d 11387, at *9; *Olin Corp.*, 124 USPQ2d at 1330; *Azeka Bldg. Corp. v. Azeka*, 122 USPQ2d 1477, 1480 (TTAB 2017); *In re Integrated Embedded*, 120 USPQ2d 1504, 1506 n.4 (TTAB 2016). In making our determination, we weigh the inquiries together and accord the appropriate weight to each one based on the evidence of record.

We conduct our analysis from the perspective of the purchasing public because "it is that impact or impression which should be evaluated in determining whether or not the primary significance of a word when applied to a product is a surname significance." *In re Harris-Intertype Corp.*, 518 F.2d 629, 186 USPQ 238, 239 (CCPA 1975) (quoting *Ex parte Rivera Watch Corp.*, 106 USPQ 145, 149 (Comm'r Pat. 1955)).

Finally, when the mark consists of a surname and another term, the Board must evaluate the source-identifying significance of the additional term and determine whether adding the additional term to the surname alters the primary significance of the mark as a whole to the purchasing public. *See Earnhardt v. Kerry Earnhardt, Inc.*, 123 USPQ2d at 1415 (citing *In re Hutchinson Tech. Inc.*, 852 F.2d 552, 7 USPQ2d 1490, 1492 (Fed. Cir. 1988)).

Applicant argues that ATWELL is a rare surname and that consumers will not perceive ATWELL SUITES as ***primarily*** merely a surname.[9]

## III.    The extent to which consumers encounter ATWELL as a surname.

The Examining Attorney submitted the following evidence to show the use of Atwell as a surname by others:

● An excerpt from the LexisNexis surname database providing a total of 15,817 listings for people with the surname Atwell;[10]

---

[9] *See generally* Applicant's Reply Brief (42 TTABVUE 2).

[10] August 5, 2019 Office Action (TSDR 6-16). The Examining Attorney explains that this database is "a weekly updated directory of cell phone and other phone numbers (such as voice over IP) from various data providers." Examining Attorney's Brief (39 TTABVUE 6).

Applicant objects to the excerpt because the Examining Attorney did not include all the results. "As such, Applicant was not afforded an opportunity to analyze, dispute, or otherwise

● Wikipedia.org entry for the Atwell surname identifying Atwell as being of Anglo-Saxon origin and listing 18 purportedly "notable" people under "Atwell";[11] and

● A needlessly cumulative number of excerpts from Internet websites referring to people with the surname Atwell,[12] including Hayley Atwell, a British actress who starred as Peggy Carter in the superhero film CAPTAIN AMERICA: THE FIRST AVENGER (2011), CAPTAIN AMERICA: THE WINTER SOLDIER (2014), AVENGERS: AGE OF ULTRON

---

comment on the accuracy or relevance of the referenced information." Applicant's Brief, p. 12 (37 TTABVUE 16). The Examining Attorney submitted the first 200 entries, including the search term, results, and the date the Examining Attorney conducted the search. August 5, 2019 Office Action (TSDR 6-16). With this information, Applicant was able to identify that there are multiple duplicate entries. Applicant's Brief, p. 12 (37 TTABVUE 16). The information the Examining Attorney provides allowed Applicant to reproduce the Examining Attorney's results for further examination and analysis. In addition, Applicant countered the Examining Attorney's evidence by submitting data from the U.S. Census Bureau showing 8,622 people with the last name Atwell. February 10, 2020 Response to Office Action (TSDR 30-31). Finally, the first 200 entries is a representative sample of the Atwell directory of telephone listings. We do not need all 15,817 listings. In fact, we discourage submission of that sort of unnecessarily cumulative evidence. Moreover, this excerpt was appended to the *initial* Office action, as to which Applicant had the opportunity—indeed, *several* opportunities during prosecution—to "analyze, dispute, or otherwise comment on [its] accuracy or relevance."

This situation is nothing like the evidentiary record in *In re Eximius Coffee*, 120 USPQ2d at 1280, where the Examining Attorney submitted only one page of listings, making it impossible for the applicant to conduct any sort of analysis. There, the Board noted that the probative value of the LexisNexis evidence was limited, but the Board did not strike the evidence.

We overrule Applicant's objection.

[11] September 11, 2020 Office Action (TSDR 169-170).

[12] September 11, 2020 Office Action (TSDR 83-233); April 6, 2021 Denial of Request for Reconsideration (TSDR 30-388). Because there is documentary evidence that there are at least 8,622 people and as many as 15,817 people with the Atwell surname in the United States, the Examining Attorney does not need to submit numerous articles proving that numerous people have the surname. Under these circumstances, the Examining Attorney should have focused on the most prominent people and provided representative articles and websites from across the country.

(2015), ANT MAN (2015), and AVENGERS: END GAME (2019);[13] Shane Atwell, a Michigan state house candidate who signed a term limits pledge;[14] and multiple news articles written by Sam Atwell, a reporter for Fox4kc.com in Kansas City.[15]

To counter the Examining Attorney's evidence regarding the use of Atwell as a surname, Applicant submitted 2010 census data purportedly derived from the U.S. Census Bureau retrieved from a search of the website <projects.newsday.com/database/long-island/census-last-names/?where=name%5eATWELL&offset=0> showing 8,622 people with the last name Atwell, ranking 4,116 on the list of surnames.[16] In addition, Applicant's linguistics expert testified that Atwell as a "surname is most frequently used in [t]he United States, where it is borne by 11,363 people, or 1 in 31,898."[17]

The Examining Attorney inadvertently supported Applicant's case by submitting a Wikipedia.org entry for a "list of companies named after people" corroborating Applicant's position that Atwell is a rarely encountered surname because the list did not include any listings for Atwell.[18]

---

[13] September 11, 2020 Office Action (TSDR 85, and 159-165); April 6, 2021 Denial of Request for Reconsideration (TSDR 96-100, 149-150, and 293-296).

[14] September 11, 2020 Office Action (TSDR 102).

[15] September 11, 2020 Office Action (TSDR 109, 139).

[16] February 10, 2020 Response to Office Action (TSDR 30-31).

[17] Eggington Decl. ¶22 attached to Applicant's March 11, 2021 Request for Reconsideration (TSDR 277-278) (based on Forebears.com the witnessed described as "another recognized genealogical company.").

[18] September 11, 2020 Office Action (TSDR 297-324). *See also* Did You Know? website (didyouknow.cd) where the entry "companies named after people" did not list an Atwell. *Id.* at TSDR 325-335). The .cd url is the Internet country code for Democratic Republic of the Congo. Generally, we do not consider websites emanating from foreign countries on the issue

While hardly a common surname, Atwell is not so rarely encountered that consumers would fail to recognize it as a surname. *See Etablissements Darty et Fils*, 225 USPQ at 653 ("[E]vidence that others in a number of cities in this country bear the surname DARTY" shows that "as a surname, DARTY is not so unusual that such significance would not be recognized by a substantial number of persons."); *In re tapio,* 2020 USPQ2d 11387, at *9 (370 occurrences in the LexisNexis public records database, 71,018 hits in the whitepages.com found probative of surname significance); *In re Olin Corp.*, 124 USPQ2d at 1331 (LexisNexis public records search for Olin returned 7,552 results and census data that counted 4,163 people with the surname Olin); *In re Binion*, 93 USPQ2d 1531, 1537 (TTAB 2009); (1416 listings in the LexisNexis USFIND database); *In re Woolley's Petite Suites*, 18 USPQ2d 1810, 1812 (TTAB 1991) ("As to the number of references submitted by the Examining Attorney, we do not believe that the volume of references is the critical factor. Four references which clearly and unequivocally illustrate a common usage and understanding of the term in question by the relevant public should be just as effective to prove the point as would be a greater volume of cumulative evidence."); *In re Rebo High Definition Studio Inc.*, 15 USPQ2d 1314, 1315 (TTAB 1990) ("[A]lthough the telephone directory listings and NEXIS references are somewhat limited, they do show that, in addition to applicant's president, others in cities in different areas around the country bear the surname REBO, and that people

---

of how U.S. consumers perceive an applied-for mark. In this case, however, since the Examining Attorney submitted it, we will consider it as evidence. Though it may be viewed as supporting Applicant's position, its probative value is extremely limited.

throughout the country have been exposed to this surname connotation by virtue of the references in periodicals with national circulation.").

In addition, the information about Hayley Atwell, who has achieved considerable renown having appeared in the Marvel Comics Captain America and Avengers movie series, is further evidence of the public's exposure to the Atwell surname. *See Adlon Brand*, 120 USPQ2d at 1720 (through the media, the public has been exposed to the surname).

"Regardless of the rarity of the surname, the test is whether the primary significance of the term to the purchasing public is that of a surname." *Binion*, 93 USPQ2d at 1537. "The relevant question is not simply how frequently a surname appears, however, but whether the purchasing public for Applicant's services is more likely to perceive Applicant's proposed mark as a surname rather than as anything else." *In re Beds & Bars Ltd.*, 122 USPQ2d 1546, 1551 (TTAB 2017), *quoted in In re Olin Corp.*, 124 USPQ2d at 1330-31; *Adlon Brand*, 120 USPQ2d at 1721 ("The issue to be determined under the statute is whether the public would perceive the surname significance as the proposed mark's primary significance, not whether the surname is rarely encountered.").

## IV. Whether ATWELL has a non-surname, "ordinary language" meaning.

Neither the MERRIAM WEBSTER DICTIONARY (merriam-webster.com) nor THE COLUMBIA GAZETTEER OF THE WORLD (columbiagazetteer.org) has definitions or

listings for "Atwell."[19] Such evidence is probative that "Atwell" has no other meaning as a word. *In re Olin Corp.*, 124 USPQ2d at 1332 (citing *Adlon Brand*, 120 USPQ2d at 1719-20).

Applicant's linguistics expert opines that ATWELL has "a metaphorical meaning akin to AT A GOOD PLACE which leads to the interpretation of the phrase ATWELL SUITES being AT A GOOD PLACE TO STAY or AT A GOOD PLACE TO RESIDE."[20] However, there are no examples of anyone anywhere using the term "Atwell" in this manner. This is just speculation, albeit by an expert linguist. Its probative value is de minimis.

We find that "Atwell" does not have a non-surname, "ordinary language" meaning. The evidence that "Atwell" has no other recognized meaning supports finding that "Atwell" is primarily merely a surname. *See In re Eximius Coffee*, 120 USPQ2d at 1280; *In re Isabella Fiore LLC*, 75 USPQ2d 1564, 1566 (TTAB 2005).

## V. Applicant is not connected with the Atwell surname

"There is no evidence of record that anyone connected with the Applicant has the ATWELL surname."[21] However, the fact that no one named Atwell is associated with Applicant does not tend to establish, one way or the other, whether consumers will perceive the proposed mark as a surname. *In re tapio,* 2020 USPQ2d 11387, at *11; *In re Gregory*, 70 USPQ2d 1792, 1795 (TTAB 2004) (the fact that "a proposed mark is

---

[19] August 5, 2019 Office Action (TSDR 27-30).

[20] Eggington Decl. ¶13 attached to Applicant's March 11, 2021 Request for Reconsideration (TSDR 275).

[21] February 10, 2020 Response to Office Action (TSDR 19).

not the applicant's surname, or the surname of an officer or an employee [of applicant], does not tend to establish one way or the other whether the proposed mark would be perceived as a surname."). This inquiry is neutral.[22]

## VI. Whether Atwell has the structure and pronunciation of a surname.

Some names, by their very nature, have only surname significance even though consumers rarely encounter them. *See In re Industrie Pirelli Societa per Azioni*, 9 USPQ2d 1564, 1566 (TTAB 1988) (holding PIRELLI primarily merely a surname, the Board stated that "certain rare surnames look like surnames and certain rare surnames do not and . . . 'PIRELLI' falls into the former category."); *In re Petrin Corp.*, 231 USPQ 902 (TTAB 1986) (holding PETRIN primarily merely a surname). Conversely, consumers may encounter certain surnames that do not have the appearance of surnames. In such cases, even in the absence of non-surname significance, a reasonable application of the "primary significance to the purchasing

---

[22] Applicant cites *In re Piano Factory Grp. Inc.*, 85 USPQ2d 1522, 1523 (TTAB 2006) to support its contention that since no one associated with Applicant has the surname Atwell, this inquiry favors Applicant. Applicant's Brief, p. 11 (37 TTABVUE 15). However, *Piano Factory Grp.* holds the fact that no one associated with applicant has the surname Vose "does not tend to establish one way or the other whether a proposed mark would be perceived as a surname." *Id.* (quoting *In re Gregory*, 70 USPQ2d at 1795).

To be clear, the lack of evidence that a person associated with an applicant has the surname at issue is not probative of whether consumers perceive the term as a surname, whereas evidence that someone associated with an applicant has that surname can be probative that consumers perceive the term as a surname. *See, e.g., In re Etablissements Darty et Fils*, 759 F.2d 15, 225 USPQ 652, 653 (Fed. Cir. 1985) (evidence that a proposed mark is "the surname of a principal of the business" is relevant to show that public would perceive the term as a surname); *In re Integrated Embedded*, 120 USPQ2d at 1506-07 (Applicant's specimen of use and Examining Attorney's evidence established that surname Barr in BARR GROUP mark identified Applicant's "namesake" and current Chief Technical Officer).

public" test could result in a finding that the surname, when used as a mark, would be perceived as arbitrary or fanciful. *In re United Distillers plc*, 56 USPQ2d 1220, 1222 (TTAB 2000) (finding HACKLER does not have the look and feel of a surname); *see also In re Joint-Stock Co. "Baik"*, 84 USPQ2d 1921, 1923 (TTAB 2007) (finding lack of other recognized meaning does not in itself imbue a mark with the "look and feel" of a surname).

Assessing whether "Atwell" has the structure and pronunciation of a surname is a "decidedly subjective" inquiry. *Benthin*, 37 USPQ2d at 1333; *see also In re Binion*, 93 USPQ2d at 1537. Applicants and examining attorneys may submit evidence that, due to a term's structure or pronunciation, the public would or would not perceive it to have surname significance.

The Examining Attorney submitted excerpts from the Rhyme Zone website (rhymezone.com) listing surnames with a structure similar to "Atwell." The Examining Attorney submitted the following two syllable names having a "well" suffix:

● Attwell (with two "t"s), a "very rare" surname ranked as the 88,311 most common surname;[23]

● Caldwell, a "common" surname ranked as the 272 most common surname;[24]

● Adwell, a "very rare" surname ranked as the 30,838 most common surname;[25]

---

[23] April 6, 2021 Denial of Request for Reconsideration (TSDR 17).

[24] September 11, 2020 Office Action (TSDR 77).

[25] *Id.* at TSDR 80.

- Cadwell, a "rare" surname ranked as the 9,150 most common surname;[26]

- Fawell, a "very rare" surname ranked as the 85,257 most common surname;[27]

- Farwell, a "rare" surname ranked as the 7,339 most common surname;[28]

- Blackwell, a "common" surname ranked as the 612 most common surname;[29]

- Tredwell, a "very rare" surname ranked as the 53,755 most common surname;[30]

- Treadwell, a "rare" surname ranked as the 3,357 most common surname;[31]

- Coswell, a "very rare" surname ranked as the 88,476 most common surname;[32]

The Examining Attorney submitted the following two syllable names having an "At" prefix:[33]

- Attwell (with two "t"s), a "very rare" surname ranked as the 88,311 most common surname;[34]

- Atwood, a "common" surname ranked as the 1,709 most common surname;[35]

- Attridge, a "very rare" surname ranked as the 75,337 most common surname;[36]

---

[26] *Id.* at TSDR 81.

[27] *Id.* at TSDR 82.

[28] *Id.* at TSDR 336.

[29] April 6, 2021 Denial of Request for Reconsideration (TSDR 21).

[30] *Id.* at TSDR 22.

[31] *Id.* at TSDR 23.

[32] *Id.* at TSDR 26.

[33] There is also an Atwater, a "rare" surname ranked as the 7,858 most common surname. *Id.* at TSDR 17.

[34] *Id.* at TSDR 17.

[35] *Id.* at TSDR 16.

[36] *Id.* at TSDR 18.

● Atkins, a "common" surname ranked as 500 most common surname.[37]

In addition, Applicant's linguistic expert explained the derivation of the surname

Atwell quoting the "Internet Surname Database" sponsored by "MyHeritage DNA,"

"a well-established genealogical company."

> This unusual surname is of Anglo-Saxon origin, and is from a topographical name for someone who lived by a stream, a spring or a well. The derivation is from the Olde English pre 7th Century "aet", at, and "wiella", well, spring or stream, which developed into the Middle English (1200-1500) "atte well(e)".[38]

To counter the Examining Attorney's evidence, Applicant submitted excerpts from

the third-party websites listed below to show that the third parties purportedly

"adopted the coined term 'ATWELL' for various 'pleasing' consumer goods in the

furniture, home goods, and clothing fields."[39]

● Serena & Lily website (serenaandlily.com) advertising the sale of an Atwell

Chandelier;[40]

● Restoration Hardware website (restorationhardware.com) advertising the

Atwell Lighting Collection;[41]

---

[37] *Id.* at TSDR 19.

[38] Eggington Decl. ¶20 attached to Applicant's March 11, 2021 Request for Reconsideration (TSDR 277).

[39] February 10, 2020 Response to an Office Action (TSDR 21). *See also, id.* ("ATWELL is a coined term with no meaning other than to identify Applicant's offerings."); *id.* at TSDR 20 ("Fanciful marks like ATWELL are inherently the strongest trademarks because they have no other meaning than to identify the source of the products/services offered under them."). However, as Applicant conceded, "Atwell is a rare surname" (Applicant's Reply Brief, p. 1 (42 TTABVUE 2)) and, thus, it is not coined or fanciful term because Applicant did not invent it.

[40] February 10, 2020 Response to an Office Action (TSDR 58).

[41] *Id.* at TSDR 60.

● Wayfair website (wayfair.com) advertising the Atwell Geometric Room Darkening Thermal Grommet Single Curtain Panel;[42]

● BHLDN website (bhldn.com) advertising the "Jenny by Jenny Yoo Atwell Skirt";[43]

● Hinkley Lighting website (hinkleylightinglights.com) advertising Hinkley Atwell lights;[44] and

● Macy's website (macys.com) advertising "Johnston & Murphy Men's Atwell Textured Oxfords."[45]

Despite Applicant's evidence showing third parties using ATWELL as a trademark for various products, there is no evidence demonstrating why these third parties adopted ATWELL. *Cf. In re Harris-Intertype Corp.*, 518 F.2d 629, 186 USPQ 238, 240 (CCPA 1975) ("Appellant cites the registration of 'HARRIS' (to other owners) on the principal register without reliance on subsection 2(f), as shown by registration Nos. 743,358 (January 8, 1963) and 888,113 (March 24, 1970). We do not know what evidence was before the PTO when the applications were considered, so the citations have no precedential value."). The fact that various third parties sell ATWELL lights, shoes, or skirts does not mean consumers will not perceive "Atwell" as a surname when used in or as a trademark. The record shows that "Atwell" has no readily

---

[42] *Id.* at TSDR 62.

[43] *Id.* at TSDR 64.

[44] *Id.* at TSDR 66. Consumers could perceive Hinkley Atwell as a name and, thus, Atwell would be a surname.

[45] *Id.* at TSDR 67.

recognized meaning other than its surname significance. Further, on its face, "Atwell"

does not look like a coined word or an acronym, nor like anything else but a surname.

## VII. Whether the word "Suites" is merely descriptive in connection with Applicant's services and, if so, does adding the word "Suites" to the surname "Atwell" alter the primary significance of the mark as a whole?

The MERRIAM WEBSTER DICTIONARY (merriam-webster.com) defines "Suite" as,

inter alia, "a group of things forming a unit or constituting a collection … such as a

group of rooms occupied as a unit," and "a group of rooms in a hotel that is used by

one person, couple, family, etc."[46]

The Examining Attorney submitted excerpts from third-party websites showing

the word "Suite" used to identify a group of rooms in a hotel. For example,[47]

● Washington DC Suite Hotels on Tripadvisor.com;[48]

● Hampton Inn & Suites (Hilton.com);[49] and

● Trump International Hotel: Suites (trumphotels.com).[50]

*See Woolley's Petite Suites*, 18 USPQ2d at 1812 ("The evidence submitted by the

Examining Attorney is sufficient to establish that in the hotel industry, the term

'petite suites' has a common descriptive meaning.").

---

[46] August 5, 2019 Office Action (TSDR 16, 19).

[47] The Examining Attorney submitted excerpts from two websites that did not refer to "Suites." *See* September 11, 2020 Office Action (the DealBase website (dealbase.com) "Search Marriott Deals" (TSDR 56-58)), and Westin Hotels & Resorts website (westin.marriott.com) (TSDR 68-73). Therefore, we do not afford these two website excerpts any probative value.

[48] September 11, 2020 Office Action (TSDR 41).

[49] *Id*. at TSDR 55.

[50] *Id*. at TSDR 59.

Applicant disclaimed the exclusive right to use "Suites" in response to the Examining Attorney's requirement for a disclaimer on the ground that the word "Suites" is descriptive when used in connection with hotel services.[51] Applicant's disclaimer is a concession that "Suites" is not inherently distinctive. *In re DNI Holdings Ltd.*, 77 USPQ2d 1435, 1442 (TTAB 2005) ("it has long been held that the disclaimer of a term constitutes an admission of the merely descriptive nature of that term ... at the time of the disclaimer."). *See also Quaker State Oil Refining Corp. v. Quaker Oil Corp.*, 453 F.2d 1296, 172 USPQ 361, 363 (CCPA 1972) (disclaimer is an admission of descriptiveness at the time the disclaimer was made); *In re Interco Inc.*, 29 USPQ2d 2037, 2038 n.3 (TTAB 1993) ("It has been held that the disclaimer of a term constitutes both an admission of the merely descriptive nature of such term, as applied to the goods or services in connection with which it is used, and an acknowledgement of the lack of an exclusive right therein at the time of the disclaimer.").

The disclaimer is also a concession that ATWELL SUITES is not a unitary mark. When a mark as a whole creates a commercial impression separate and apart from any of its components, we consider the mark to be "unitary." *See* TRADEMARK MANUAL OF EXAMINING PROCEDURE (TMEP) § 1213.05 (July 2021). The test for determining whether a composite mark is unitary inquires whether the elements of a mark are so integrated or merged together that we cannot regard them as separable. *See In re*

---

[51] August 5, 2019 Office Action (TSDR 4-5); February 10, 2020 Response to Office Action (TSDR 6).

*EBS Data Processing*, 212 USPQ 964, 966 (TTAB 1981); *In re Kraft, Inc.*, 218 USPQ 571, 573 (TTAB 1983). The inquiry focuses on "how the average purchaser would encounter the mark under normal marketing of such goods and also . . . what the reaction of the average purchaser would be to this display of the mark." *Dena Corp. v. Belvedere Int'l, Inc.*, 950 F.2d 1555, 21 USPQ2d 1047, 1052 (Fed. Cir. 1991) (quoting *In re Magic Muffler Serv., Inc.*, 184 USPQ 125, 126 (TTAB 1974)). The Court of Appeals for the Federal Circuit has set forth the elements of a unitary mark:

> A unitary mark has certain observable characteristics. Specifically, its elements are inseparable. In a unitary mark, these observable characteristics must combine to show that the mark has a distinct meaning of its own independent of the meaning of its constituent elements. In other words, a unitary mark must create a single and distinct commercial impression.

*Dena Corp.*, 21 USPQ2d at 1052. *See also* TMEP § 1213.05 ("If the matter that comprises the mark or relevant portion of the mark is unitary, no disclaimer of an element, whether descriptive, generic, or otherwise, is required.") citing *Dena Corp.* 21 USPQ2d at 1052 ("If the matter that comprises the mark or relevant portion of the mark is unitary, no disclaimer of an element, whether descriptive, generic, or otherwise, is required."); and *In re EBS Data Processing, Inc.*, 212 USPQ at 966 ("[I]f the elements are so merged together that they cannot be regarded as separable elements, the mark is a single unitary mark and not a composite mark and no disclaimer is necessary.").

Applicant's disclaimer of the exclusive right to use "Suites" suggests that Applicant has conceded that ATWELL and SUITES are not inseparable and that the

mark ATWELL SUITES does not have a distinct meaning separate and apart from the combination of the name "Atwell" and the descriptive term "Suites."[52]

In addition, Applicant has submitted no evidence tending to show that adding the descriptive word "Suites" to "Atwell" alters the primary significance of "Atwell" as a surname in the mark ATWELL SUITES. *See In re Weiss Watch Co.*, 123 USPQ2d 1200 (TTAB 2017) (holding WEISS WATCH COMPANY for clocks, watches, and related goods primarily merely a surname); *Azeka Bldg. Corp., v. Azeka*, 122 USPQ2d at 1477 (holding AZEKA'S RIBS for barbecue sauce primarily merely a surname); *In re Integrated Embedded*, 120 USPQ2d at 1504 (holding BARR GROUP for training, engineering, and expert witness services in the field of computer hardware and software primarily merely a surname). Accordingly, we find that the additional, disclaimed term "suites" does not alter public perception of the mark as a whole as primarily merely a surname.

## VIII. Whether the public perceives ATWELL SUITES, in the alternative, to be primarily a meaningless, coined term.

Applicant contends that consumers viewing its ATWELL SUITES marks in connection with Applicant's hotel services will perceive ATWELL SUITES as something other than as a surname.[53] First, Applicant asserts that ATWELL SUITES

---

[52] However, Applicant's linguistic expert avers, "consumers will not think in terms of ATWELL (as a surname) plus SUITES. Rather we think of ATWELL SUITES as a single semantic unit, or semantic 'chunk.' Individuals viewing ATWELL SUITES would not parse the separate meanings of ATWELL and SUITES." Eggington Decl. ¶14 attached to Applicant's March 11, 2021 Request for Reconsideration (TSDR 275). Applicant's disclaimer of "Suites" contradicts its expert testimony.

[53] Applicant's Brief, p. 14 (37 TTABVUE 18).

is a coined term that consumers will not perceive as a surname.[54] We acknowledge that Applicant created the mark ATWELL SUITES. However, we would not classify it as a "coined" term because Applicant invented neither the name "Atwell," nor the word "Suites." Nevertheless, Applicant appears to be the first to combine the surname Atwell and the descriptive term "Suites." Similarly, under Applicant's hypothesis, WYNDHAM HOTELS & RESORTS, LA QUINTA BY WYNDHAM, DAYS INN BY WYNDHAM, and SUPER 8 BY WYNDHAM are coined terms consisting of a surname and other terms.[55] However, "Atwell," as Applicant has conceded, is a surname, not a coined term. As noted above in Section VII, the descriptive word "Suites" does not alter the primary significance of "Atwell" as a surname in the term ATWELL SUITES when used as a mark for hotel-related services.

As discussed above, Applicant's linguistic expert speculates that "Atwell" has "a metaphorical meaning akin to AT A GOOD PLACE which leads to the interpretation of the phrase ATWELL SUITES being AT A GOOD PLACE TO STAY or AT A GOOD

---

[54] *Id.* at p. 15 (37 TTABVUE 19). Professor McCarthy defines as "coined" mark as follows:

> "Coined" of "fanciful" word marks consist of invented words that have been created for the sole purpose of serving as a trademark. … For example, marks such as EXXON for gasoline products and CLOROX for household bleach and cleaning products are made-up, "coined" words. Many pharmaceutical drug marks are made-up or coined words, such as VIAGRA, ZOCOR and LIPITOR.

2 McCarthy on Trademarks and Unfair Competition § 11:5 (5th ed. 2021).

[55] September 11, 2020 Denial of Request for Reconsideration 234-236. The RhymeZone website identifies "Wyndham" as a "very rare" surname. *Id.* at TSDR 234.

PLACE TO RESIDE."[56] However, there are no examples of anyone anywhere using the term "Atwell" to refer to "at a good place." The expert's contention without evidence is not persuasive.

Second, Applicant relies on the Butler survey to prove consumers will not perceive ATWELL SUITES as primarily merely a surname.[57] Sarah Butler, Managing Director at NERA Economic Consulting, is the Chair of the Survey and Sampling Practice. "NERA is a firm providing expert statistical, survey, economic, and financial research analysis."[58] She conducted a survey to examine "the rate at which consumers identify or associate the ATWELL SUITES mark with a person's last name or surname."[59]

Ms. Butler claims that "[t]he relevant population for this matter is consumers who have made a reservation to stay at a hotel in the U.S. in the past year or are likely to do so in the next year."[60] However, "some number of individual[s] could be exposed to the ATWELL SUITES mark without staying at a hotel."[61] Accordingly, Butler "set a quota such that at least 75 percent of my sample were required to indicate that 'they

---

[56] Eggington Decl. ¶13 attached to the March 11, 2021 Request for Reconsideration (TSDR 275).

[57] August 20, 2020 Response to an Office Action (TSDR 25-215).

[58] Butler Report ¶1 attached to the August 20, 2020 Response to an Office Action (TSDR 27).

[59] *Id.* at ¶8 (TSDR 29).

[60] *Id.* at ¶13 (TSDR 31).

[61] *Id.* at ¶14 (TSDR 31).

made a reservation in a hotel in the U.S.' in the past year or are likely to 'make a reservation to stay in a hotel in the U.S.' in the next year."[62]

Butler showed the survey respondents the survey stimulus reproduced below:[63]

**Figure 1: Survey Stimulus**

Please look at the following information below. Take as much time as you would like to review this information before moving on to the survey questions.

# ATWELL SUITES

Hotel services; providing temporary accommodation services; restaurant services; bar services; café services; hotel reservation services; restaurant reservation services; catering services for the provision of food and drink; provision of conference, meeting and exhibition facilities, and provision of general purpose facilities for events

Butler then asked the survey respondents "What is the primary meaning of ATWELL SUITES to you?"[64]

Next, the survey provides the survey respondents with a list of potential responses and asks which items on the list they associate with ATWELL SUITES. We reproduce below the question and list:[65]

---

[62] *Id.* at ¶21 (TSDR 33-34).

[63] *Id.* at ¶25 (TSDR 35-36).

[64] *Id.* at ¶22 (TSDR 34).

[65] *Id.* at ¶23 (TSDR 34-35).

Q. You may have already mentioned this, but which of the following, if any, do you associate with ATWELL SUITES? *(Select all that apply)*
1. A person's last name
2. The name of an office
3. The name of a hotel
4. The name of a restaurant
5. A phrase meaning "towards the good"
6. A phrase meaning "luck or coincidence"
7. A phrase meaning "lives by the stream"
8. The name of a furniture brand
9. The name of a clothing brand
10. The name of a community or township
11. The name of a college
12. A made-up phrase
13. The name of a bank
14. Other *(Please specify)*
15. None of these
16. Don't know / unsure

"A total of 395 respondents ages 18 years old or older completed the survey."[66]

In response to the first question [What is the meaning of ATWELL SUITES to you?] "only one respondent referenced ATWELL SUITES as a 'name.'"[67] However, Butler opined that this response was ambiguous because based on the verbatim responses, it is unclear whether the respondent was referring to a hotel name, business name, or other name, especially considering that in response to the second question, this respondent selected "don't know/unsure." "The remaining 394 respondents did not describe or characterize ATWELL SUITES as a surname or name in general."[68]

---

[66] *Id.* at ¶28 (TSDR 36).

[67] *Id.* at ¶29 (TSDR 37).

[68] *Id.* at ¶29 (TSDR 37).

In response to the second question with a list of potential responses, 16 respondents identified a person's last name. We reproduce below the responses:

**Table 5: Respondent Associations with ATWELL SUITES by Hotel Travel**

| Response | Past/Future Purchaser | | Not Past/Future Purchaser | |
|---|---|---|---|---|
| | Count | Percent | Count | Percent |
| The name of a hotel | 208 | 71.2% | 55 | 53.4% |
| The name of a restaurant | 33 | 11.3% | 8 | 7.8% |
| A phrase meaning "towards the good" | 31 | 10.6% | 7 | 6.8% |
| A person's last name | 16 | 5.5% | 6 | 5.8% |
| A made-up phrase | 18 | 6.2% | 2 | 1.9% |
| The name of an office | 8 | 2.7% | 4 | 3.9% |
| The name of a community or township | 9 | 3.1% | 2 | 1.9% |
| The name of a college | 4 | 1.4% | 6 | 5.8% |
| The name of a bank | 4 | 1.4% | 5 | 4.9% |
| A phrase meaning "lives by the stream" | 7 | 2.4% | 1 | 1.0% |
| The name of a clothing brand | 3 | 1.0% | 5 | 4.9% |
| A phrase meaning "luck or coincidence" | 4 | 1.4% | 3 | 2.9% |
| The name of a furniture brand | 1 | 0.3% | 2 | 1.9% |
| Other (Please specify) | 7 | 2.4% | 1 | 1.0% |
| None of these | 18 | 6.2% | 19 | 18.4% |
| Don't know / unsure | 17 | 5.8% | 10 | 9.7% |
| **Total Respondents** | **292** | | **103** | |

According to Ms. Butler, the "results clearly demonstrate that consumers do not think that the primary meaning of the applied-for mark ATWELL SUITES is a surname."[69]

This is not surprising because consumers are unlikely to associate a surname combined with a descriptive term as being a surname, let alone primarily merely a surname (e.g., it is unlikely anyone perceives Atwell Suites, Barr Group,[70] or

---

[69] *Id.* at ¶32 (TSDR 40).

[70] *In re Integrated Embedded*, 120 USPQ2d 1504 (TTAB 2016).

Earnhardt Collection[71] as actual surnames). There is no dispute that in considering whether a mark is primarily merely a surname the "mark sought to be registered must be considered in its entirety." *Hutchinson Tech.*, 7 USPQ2d at 1492. In these appeals, Applicant disclaims the exclusive right to use the word "Suites" and concedes that "Atwell" is a rare surname. Thus, the essence of these appeals is whether the combination of the descriptive word "Suites" with the surname Atwell diminishes the surname significance of "Atwell" such that the primary significance of ATWELL SUITES is other than as a surname. *Miller v. Miller*, 105 USPQ2d 1615, 1622 (TTAB 2013). In other words, does the mark in its entirety engender a different commercial impression than the component parts of the mark (i.e., a surname and a descriptive term)? *See Earnhardt v. Kerry Earnhardt, Inc.*, 123 USPQ2d at 1415 (citing *Hutchinson Tech.*, 7 USPQ2d at 1492) discussed in Section VII above.

Merely descriptive terms that have not acquired source-identifying significance or the generic name for goods or services typically do not "detract from the primary surname significance in a mark containing a surname." *Azeka Bldg. Corp. v. Azeka*, 122 USPQ2d at 1482 n.9 (construing *Hutchinson Tech.*, 7 USPQ2d at 192-93). *See also Weiss Watch Co.*, 123 USPQ2d at 1206 (WEISS WATCH COMPANY for clocks, watches, and related goods is primarily merely a surname); *Miller v. Miller*, 105 USPQ2d at 1622 (MILLER LAW GROUP for legal services is primarily merely a surname).[72] Similarly, combining a surname with other matter incapable of

---

[71] *Earnhardt v. Kerry Earnhardt, Inc.*, 864 F.3d 1374, 123 USPQ2d 1411 (Fed. Cir. 2017).

[72] *Miller* cites *In re Hamilton Pharms. Ltd.*, 27 USPQ2d 1939 (TTAB 1993) (holding HAMILTON PHARMACEUTICALS primarily merely a surname for pharmaceutical

indicating source typically will not overcome the mark's surname significance. *See, e.g., In re I. Lewis Cigar Mfg. Co.*, 205 F.2d 204, 98 USPQ 265, 267 (CCPA 1953) (holding S. SEIDENBERG & CO'S. primarily merely a surname).

Thus, the Butler survey asks the wrong questions.[73] The first question in the Butler survey should have been "What is the primary meaning of the term ATWELL in the mark ATWELL SUITES to you?", or words to that effect. The second question should have been "which of the following, if any, do you associate with the term ATWELL in the mark ATWELL SUITES?", and then list the sixteen choices that were given. *See I. Lewis Cigar Mfg. Co.*, 98 USPQ at 267 (holding the mark S. SEIDENBERG & CO'S. primarily merely a surname because "the addition of a single initial is [not] sufficient to remove it from that category. Further, the addition of the expression '& Co's." … cannot be held to distinguish or relate to anything except the surname 'Seidenberg.'").

Moreover, showing respondents ATWELL SUITES (which is in a common form used for hotel names, where a name is set forth first followed by a descriptive or generic term such as "Suites"),[74] then telling them the mark is used for hotel services, and then giving them a multiple-choice response list that includes "[t]he name of a

---

products); *In re Cazes*, 21 USPQ2d 1796 (TTAB 1991) (holding BRASSERIE LIPP primarily merely a surname when used in connection with restaurant services); *In re Woolley's Petite Suites*, 18 USPQ 1810 (TTAB 1991) (holding WOOLLEY'S PETITE SUITES primarily merely a surname for hotel and motel services).

[73] In the alternative, Ms. Butler should have added the questions discussed in the main body to the questions she asked as well as "With what do you associate the word 'Suites' in the mark ATWELL SUITES?"

[74] September 11, 2020 Office Action (TSDR 41-73) (*see e.g.,* Hyatt Place, Hampton Inn & Suites, Hamilton Hotel, Trump International Hotel).

hotel" as not merely a choice but the first choice, is highly leading of that particular choice as the proper response.

We find that the addition of the descriptive term "Suites" to the surname Atwell in the mark ATWELL SUITES does not change or alter the surname significance of "Atwell" in the mark as a whole.[75]

## IX.    Applicant's registration

Applicant is the owner of Registration No. 6279891 for a mark containing ATWELL SUITES, reproduced below, for the same services as in the applications at issue.[76]

# ATWELL SUITES

## AN IHG HOTEL

Applicant disclaims the exclusive right to use the words "Suites" and "Hotel."

Applicant contends, "The USPTO should treat ATWELL SUITES AN IHG HOTEL and ATWELL SUITES the

---

[75] Even if we took the survey at face value, it is not sufficient to overcome the Examining Attorney's prima facie case. *Cf. USPTO v. Booking.com B.V.*, _U.S._, 140 S. Ct. 2298, 2020 USPQ2d 10729, at *9 (2020) (Sotomayor, concurring) ("I do not read the Court's opinion to suggest that surveys are the be-all and end-all. As the Court notes, sources such as 'dictionaries, usage by consumers and competitors, and any other source of evidence bearing on how consumers perceive a term's meaning' may also inform whether a mark is generic or descriptive." (citing decision at n.6, 2020 USPQ2d 10729, at **7)).

[76] Registered March 2, 2021, based on U.K. Registration No. 3399424 dated August 2, 2019. According to the registration certificate, "[t]he mark consists of the wording 'ATWELL SUITES' above the wording 'AN IHG HOTEL.'" Applicant attached a copy of the registration to the March 11, 2021 Request for Reconsideration (TSDR 30).

same for surname purposes,"[77] noting that during examination of that application,

the USPTO did not issue a surname refusal.[78] According to Applicant:

> As reflected in [Applicant's website and social media] **ATWELL SUITES** materials, the AN IHG HOTEL and ATWELL SUITES marks will be perceived by consumers as having <u>the same primary significance, i.e., not that of a surname</u>. The inclusion of "AN IHG HOTEL" does not change that fact. "AN IHG HOTEL" simply identifies the hotel company involved.
>
> Because the primary significance of the **ATWELL SUITES** AN IHG HOTEL mark is not primarily merely a surname, the same conclusion must hold for the ATWELL SUITES mark that is the subject of this application."[79]

Because Applicant's registered mark includes the apparently inherently distinctive term IHG, the registered mark is not primarily merely a surname, and for registration purposes it would not be subject to a surname refusal. While the applications at issue in this appeal have characteristics similar to the registered mark, the USPTO's allowance of the registered mark does not bind the Board. *See, e.g.*, *In re Nett Designs, Inc.*, 236 F.3d 1339, 57 USPQ2d 1564, 1566 (Fed. Cir. 2001). In fact, because the registered mark includes the inherently distinctive term IHG, the registered mark has little, if any, relevance to the issue in these appeals.

---

[77] Applicant's Brief, p. 11 (37 TTABVUE 15).

[78] March 11, 2021 Request for Reconsideration (TSDR 17).

[79] *Id.* at (TSDR 18-19).

## X.   Conclusion

We find that the record, taken as a whole, establishes that the primary significance of ATWELL SUITES to the purchasing public is primarily merely a surname within the meaning of Section 2(e)(4) of the Trademark Act.

**Decision:** We affirm the refusal to register Applicant's marks ATWELL SUITES, (in standard characters) and ATWELL SUITES (stylized)[80].

---

[80] We note that Applicant does not argue that the minimally-stylized font used in Serial No. 88430162 creates a "separate commercial impression over and above" or "separate and apart from" the literal terms.  *Cf. In re Cordua Rests., Inc.*, 823 F.3d 594, 118 USPQ2d 1632, 1639-40 (Fed. Cir. 2016); *In re Northland Alum. Prods., Inc.*, 777 F.2d 1556, 227 USPQ 961, 964 (Fed. Cir. 1985), nor has it offered to disclaim "ATWELL."